OPINION OF THE COURT
Phillip R. Rumsey, J.
In April 1995, a tragic automobile accident took the lives of *88 petitioner’s decedent, Donald F. DeRosa, and his co-worker, Mark J. Petrylak. The accident occurred when Petrylak drove the vehicle (in which DeRosa was a passenger) across the center line of the highway and collided with two cars traveling in the opposite direction. Both men died at the scene. After the accident, petitioner, DeRosa’s wife, applied for death benefits under the Workers’ Compensation Law, under the theory that her husband had been killed as a result of an accident that occurred in the course of his employment with Evans’ Plumbing and Heating of Endicott. At the time, DeRosa and Petrylak had been returning home after working at a jobsite in North Norwich, New York.
Respondent Aetna Casualty and Surety Company, Evans’ compensation carrier, contested DeRosa’s claims, on the ground that, inasmuch as the men were traveling between work and home, they were not in the course of their employment when the accident occurred. On October 17, 1995, a Workers’ Compensation Law Judge (hereinafter WCLJ) ruled in the carrier’s favor on that issue. Petitioner moved to reopen the decision, however, and on October 28, 1996, a panel of the Workers’ Compensation Board reversed it, and remanded the matter for a hearing. Over a year later, on November 20, 1997, the WCLJ found that DeRosa and Petrylak were properly characterized as “outside” employees, entitled to “portal-to-portal coverage,” and therefore the subject accident did fall within the scope of the compensation law. This determination was affirmed by a three-Judge panel on June 17, 1999.[1]
In the interim, petitioner’s attorneys evidently entered into negotiations with Petrylak’s insurer, leading to a settlement of their client’s claims against Petrylak for the $100,000 limit of his automobile liability policy. The settlement was approved by the Broome County Surrogate in December 1996 (a step that was required because petitioner had been granted limited letters testamentary in connection with her husband’s estate, which did not permit her to settle claims without court approval).
When Aetna first inquired about the settlement in January 1999, petitioner’s attorney admitted that a settlement had been reached without respondent’s consent. He took the position that such consent was unnecessary, inasmuch as the set *89 tling tortfeasor (Petrylak) was a co-employee, and the workers’ compensation carrier was not entitled to assert a lien against such a payment. Respondent again raised the issue at the next hearing before the Board panel (in April 1999), and the decision issued in June 1999 remanded the matter to a WCLJ for consideration of the settlement issue. This proceeding followed, and petitioner now seeks a declaratory judgment (1) that the settlement with Petrylak was not subject to the lien or consent provisions of Workers’ Compensation Law § 29; (2) that the approval by the Surrogate, in December 1996, fulfilled the requirements of that statute; or (3) that a nunc pro tunc approval of the settlement is appropriate.
The portion of Workers’ Compensation Law § 29 (5) that requires the carrier’s consent to a settlement applies, by its exact terms, only to actions brought against those not in the same employ as the claimant. Nevertheless, it has been held that the requirement was clearly intended to govern all “third-party claims,” including those brought by one employee against another for intentional tort (see, Matter of Berenberg v Park Mem. Chapel, 286 App Div 167). The court is aware of no case directly on point — that is, in which the consent requirement has been applied in connection with the settlement of a negligence claim against a co-employee. Indeed, the fact that such situations are uncommon is hardly surprising, given the express bar to such actions found in Workers’ Compensation Law § 29 (6).
The rationale expressed in Berenberg for extending the lien and consent provisions of Workers’ Compensation Law § 29 to “all third-party claims” (and, in particular, to actions brought against a co-employee for intentional tort) is, however, no less applicable to the instant situation (cf., Matter of Petterson v Daystrom Corp., 17 NY2d 32, 39 [recovery from co-employee, in action brought under Connecticut law, subject to lien]). The goals of preventing a double recovery by a claimant, and providing reimbursement to an employer or compensation carrier that has paid benefits if a claimant obtains another source of remuneration for the same injury, are no less compelling when payment has somehow been obtained from a negligent co-employee, despite the apparent applicability of the statutory bar.[2] Accordingly, the court rejects petitioner’s initial contention that the lien and consent requirements of Workers’ *90 Compensation Law § 29 are inapplicable to the settlement at issue.
As for petitioner’s next argument, the court is not convinced that the Surrogate’s approval of the Petrylak settlement, in connection with the administration of decedent’s estate, can be deemed the equivalent of an approval by Supreme Court, for the purpose of satisfying the mandates of the Workers’ Compensation Law. Significantly, the compensation carrier was not notified of, or given any opportunity to be heard in conjunction with, the proceeding before the Surrogate. There is no indication that the issues that might have been deemed relevant by the carrier were raised or addressed therein, or that its interests were represented or protected in any way.
Accordingly, the court must address petitioner’s alternative request for an order approving the settlement nunc pro tunc. In determining whether to grant such a request, a chief consideration is the reason or excuse for the claimant’s delay in seeking court approval (see, e.g., Amsili v Boozoglou, 203 AD2d 137). Here, petitioner notes that the issue of consent was first raised by the carrier in early 1999, at which time the compensation panel determined that a hearing was necessary, and scheduled one to be held on July 29, 1999. Less than three months after that hearing was cancelled (without rescheduling) petitioner commenced this proceeding. Thus, petitioner asserts that her delay was minimal.
Respondent urges that the extent of petitioner’s tardiness in seeking approval should be measured not from the first objection by the carrier, as petitioner would have it, but from the date of the actual settlement, in late 1996. Thus, respondent posits, petitioner waited almost three years to seek approval, without any reasonable excuse therefor.
It is true that a carrier’s attempt to avoid payment of compensation, on the grounds that the injury did not occur in the course of covered employment, does not eliminate the need to obtain its consent of a settlement (see, Matter of Vincent v Geneva Pizza, 196 AD2d 917, lv denied 83 NY2d 752; Matter of *91 Daly v Daly Constr. Corp., 136 AD2d 798, 799, lv denied 72 NY2d 807; Matter of King v New York City Bd. of Educ., 132 AD2d 742).[3] In the typical case in which coverage is contested on these grounds, however, it is apparent from the outset that, if the claimant prevails on that issue, Workers’ Compensation Law § 29 (5) will apply, and consent for any settlement will be required. In this case, however, petitioner was faced with a unique situation: if the carrier were to prevail, there would be no coverage, and consent would not be necessary; but even if petitioner won, the claim being settled was one against a co-employee, within the scope of section 29 (6), with respect to which the need for consent was, if anything, uncertain.
Respondent urges that a claimant’s misunderstanding of the applicable law does not generally excuse a failure to obtain consent or seek court approval (see, Matter of Gilson v National Union Fire Ins. Co., 246 AD2d 897, 898). This was not, however, a situation where petitioner could have easily ascertained that consent was required; rather, no definitive authority apparently existed on the issue. Under these unique circumstances, and given the actual language of section 29, petitioner (though ultimately proven wrong) was not unjustified in believing that the lien and consent requirements did not apply to the claim at issue, and in waiting to see if her position would be contested by the carrier before seeking approval nunc pro tunc.
Given the entirety of the prevailing circumstances — including, in addition to the foregoing, the fact that the carrier had initially prevailed at the administrative level, obtaining a ruling (albeit one that had been later set aside for the taking of further testimony) that no coverage existed, and the fact that no benefits had been paid (cf., Amsili v Boozoglou, supra, at 137-138) — the court is of the view that, in this case, petitioner’s delay in seeking approval of the settlement should not be measured from the date of the settlement itself, but rather, from the first assertion of a contrary position by the carrier (cf., Matter of Wilbur v Utica Mut. Ins. Co., 228 AD2d 928, 929; Dennison v Pinke, 211 AD2d 853, 854). The brief delay that oc *92 curred thereafter, while petitioner attempted to resolve the matter in the administrative forum, does not warrant denial of her request (see, Amsili v Boozoglou, supra, at 138; see also, Buchanan v Scoville, 241 AD2d 965 [2-year delay does not preclude approval]).
As for the remaining factors, petitioner has demonstrated— and respondent has submitted no convincing evidence to the contrary — that the settlement was reasonable, and that the carrier was not actually prejudiced by the delay or by the settlement itself. Accordingly, it appears that there would be no reason to deny petitioner’s request for judicial approval of the settlement, nunc pro tunc, should it be made in the context of an action in which such relief could be awarded (see, Matter of Dauenhauer v Continental Cas. Ins. Co., 217 AD2d 943, 944). Nevertheless, as respondent points out, the court is without jurisdiction to grant such relief where, as here, no action has ever been brought on the claim to which the settlement relates (see, Kosiorek v University of Rochester, 152 AD2d 927). Hence, the petition must at this time be denied in its entirety, without prejudice to the pursuit of an application for approval of the settlement, nunc pro tunc, after the commencement of an appropriate third-party action.[4]

. Respondent asserts in its memorandum of law that the case has been appealed to the Appellate Division, and that reargument has been requested before the full Workers’ Compensation Board.

. Here, the settlement may have been prompted, in whole or part, by the apparent uncertainty as to the applicability of the workers’ compensation bar (given the initial administrative decision and pending proceedings), and the *90 possibility that an adverse ruling in that respect (i.e., that the claim did not fall within the scope of workers’ compensation) might give DeRosa more incentive to take the matter to trial, in turn resulting in an adverse verdict (i.e., substantially greater than the $100,000 policy limit) and a potential claim by Mrs. Petrylak against her carrier for bad-faith refusal to settle for the policy limit while that option was still available. There are, however, other scenarios that could lead to a similar result. For example, a defendant might simply neglect to raise the defense, or determine that the cost of litigating the issue exceeds the value of the case.

. While each of these decisions held that a carrier’s challenge to coverage on these grounds does not estop it from relying on the consent requirement, none involved an application for judicial approval nunc pro tunc. Therefore, the issue of whether a carrier’s persistent challenge to coverage, and the pendency of administrative proceedings relating to that challenge, could constitute a reasonable excuse for a claimant’s delay in seeking approval, was neither raised nor addressed therein.

. Petitioner’s request that the court “adjust” the settlement, in the event that a lien is found to attach thereto, by awarding her attorney the fees and expenses incurred in prosecuting this proceeding (counsel had agreed to take only $10,000 of the $100,000 settlement, with the intention of leaving petitioner with a larger amount, but is evidently loath to be so generous if the funds will end up in respondent’s pocket, through enforcement of its lien), may also be renewed at that time.